The opinion of the Court, was delivered by
ITorkbloweb, C. J.
This was an action by Johnson and Sons against Barkalow as indorser of a promissory note. The record presents two questions: First. Whether there was any legal evidence given by the plaintiffs below, of due diligence on *398 their part, in demanding payment of the maker, and giving notice of non-payment to the indorser ? And Secondly. Whether the defendant below, has done any thing, which dispenses with the necessity of such proof?- ■
The note in question was payable at the Commercial Bank at Perth Amboy. Francis W. Brinley the Notary Public for that bank, testified that he neither demanded payment,’ made the protest, nor sent the notice of non-payment; that he believed nevertheless, that all these things had been done, and he so believed from looking at certain entries or memoranda, made in his protest book, by William Whitehead, Esq. (since deceased) who was then cashier of said bank. That the witness was from home at the time, but had left with William Whitehead, a blank protest, signed and sealed by the witness;' also, blank notices signed by him, to be used, if occasion required; and as Mr. Whitehead was a very particular man, he had no doubt, that all had been done as it should have been.
Whether the agency of a Notary Public, in the case of a promissory note, is essential under our statutes, (Rev. Laws, 395, and Harr. Comp. 248) is a question, about which there seems to be some diversity of opinion at the bar; but whatever doubt there may be on that point, there can be none as to the illegality of the evidence, in this case. If any demand of payment was made, or notice of non-payment given or sent to the indorser, it was so done by William Whitehead, the cashier of the bank, who was neither a notary public nor a justice of the peace, and whose memorandums are no evidence in the cause. Nor could the Notary Public recur to them, to refresh his memory, for as he did not perform the services, and had no personal knowledge of the transaction, he could have no memory to be refreshed or strengthened by looking at what the Cashier had written on the subject.— The first section of the act of 1829, (Harr. Comp. 248) requires the Notary to keep a record of his notarial acts; the fourth section directs that he shall take and subscribe an oath) faithfully and honestly to discharge all the duties appertaining to his office, and that he will make and keep such record as >7 specified in the first section. The second section authorizes him to recur to such record for his own satisfaction; and the third section makes the record or a copy of it, legal evidence, in case the notary is dead, *399 or has removed out of the State, and upon diligent inquiry, his place of residence cannot bo found. But all these Legislative provisions are utterly useless, if a notary public may sign blanks, and leave it to other persons to use them as occasion may require ; and when called upon to prove demand of payment and due notice, recur to memorandums made by such persons, and fix the liability of parties, by swearing that he believes the services have been performed, because the persons employed by him, were very particular and careful persons. This evidence, in my opinion, was improperly admitted. It is not intended by what has now been said, to intimate an opinion' one way or the other, whether a demand made, and a notice of non-payment sent, by the cashier of the bank, or by any other person, acting as the agent or clerk of the owner of the note, provided the fact of such demand, and dishonor, and of such notice had been proved by legal evidence, would not have been as good, as if those services liad been performed and proved by a Notary Public. Whatever question, if any, there may be on that point, is left to be settled when it shall become necessary to do so. Nor is it intended to decide that a Notary Public, may not employ the Cashier, or any other person, as his clerk, to fill up his blank protests and notices, and to serve the latter on the parties, or put them in the Post Oflice : but it is intended distinctly to decide, that whether those services have been performed by the Notary himself, or by his clerk, the performance of them must be proved by the person who did perform them, if he is alive, and his testimony can be procured. The notarial record can in no case be evidence, except in the case provided for in the statute, that is, when the Notary is dead, or has removed out of the State, and upon diligent search, his place of residence cannot be found. Nor can the Notary recur for his satisfaction to any book or record not kept by him, in the manner directed by the act to which I have referred, and in conformity with the oath which he is thereby required to take. I do not mean to say, that the record must be actually written by the Notary; but it must be his record; a record of his acts, whether written by himself or a clerk, in such a sense, as to satisfy his oath, and that he may know its contents to be according to the truth.
It is insisted however, that the Cashier, who is alleged to have *400 made the demand and given the notice in this case, was dead at the time of the trial, and such no doubt was the fact, but that will not justify the Court, in dispensing with proof of demand and notice, nor in substituting for such proof, the mere belief of the notary, founded on the known precision and accuracy in business, of the cashier, that such demand had been made, and notice given. The law has provided an officer to perform these duties, and given him a compensation for his services: and in case of his death, has made his record evidence of his transactions: and if the banks will not employ such officers; or if the Notaries will take the fees, but omit to perform the services, and to keep such records as they are sworn to keep, they must answer for the consequences.
Secondly. The plaintiff’s attorney, George P. Molleson, testified that some time after this suit had been commenced, the defendant came to his office, that he admitted his indorsement of the note in question, and his liability upon it; that he complained of being poor and was going to the West; and wished the witness to accept of half of the amount due upon the note, in cash, and to take his note for the balance payable in one year; and to discontinue the suit. This proposition was not acceded to, and the plaintiffs insist that these admissions of the defendant, dispensed with the necessity of proving a demand and notice.
The indorsee of a promissory note, in order to entitle himself to an action against an indorser, must shew two things: First, that he demanded payment of the maker, at the proper time and place; and Secondly, that he gave notice to the indorser, in due season, of such demand, and of non-payment by the maker. (Ferris v. Saxton 1 South. 17.) It is however, a well settled rule at this day, that the indorser may by his own conduct, relieve the plaintiff from the necessity of proving such demand and notice; and even, if no demand has in fact been made, and no notice of dishonor given to the indorser, yet he may be held responsible, in consequence of his own acts and declarations, or of a subsequent promise to pay the money. But such promise must not only be an unconditional one, but must be made under a full knowledge of the facts that he is discharged from his legal liability, by the laches of the holder. It was so decided in Thornton v. Wynn, 12 Wheat. R. 183. The defendant in that case, upon being in *401 formed, that the drawer had not paid the note, replied that he knew he had not, that he was not to pay it: that it was the concern of the defendant alone, and the drawer had nothing to do with it: the defendant offered to take up the note, if the plaintiff would give time, and receive certain other notes, in payment.
Upon these faets it was insisted, First, That the note in question, had been made and passed to the defendant, without consideration, and merely for his accommodation, and that therefore the defendant could not complain of the want of due diligence and notice of dishonor: and Secondly, That the defendant’s admissions and offer to pay the note, amounted to an acknowledgment of the plaintiff’s right to resort to him, and dispensed with the necessity of proving a demand and notice. But the Court held, that although, the declarations of the defendant, amounted to an unequivocal admission of his original liability to pay the note, they did not necessarily admit the right of the holder to resort to him on the note, or that he had received no damage from the want of notice. For although the defendant could not fail to know, that he had not received due notice of demand, and nonpayment, yet it did not follow from his admissions, that he was apprised of the fact, that no regular demand of payment liad been made: and that a knowledge of that fact, by the defendant, at the time of making the admissions and promises, was indispensable to the plaintiff’s case; since, without such knowledge, it could not fairly be inferred that the defendant intended to waive the legal objection, for he might have acted upon the presumption, that the holder had done all that the law required him to do, in order to charge the endorser. The Court, however, did not reverse the judgment in that case, on the ground that the evidence would not have warranted the Jury in coming to the conclusion that the defendant had acted under a full knowledge of the facts of the case, but because the Court below had assumed the fact to be so, instead of leaving that inference to be made by the Jury.
In the case under consideration, the evidence was submitted to the Jury, and the question arises; whether it was sufficient to justify them in coming to the conclusion that the defendant, at the time he made the admission of his liability, and the offer of compromise proved by Mr. Molleson, was apprised of the fact, that no regular demand of payment had been made by the holdci *402 of the note ? I assume the fact, that no such demand was made, because none was lawfully proved in this case. Admitting, that a Cashier or other officer of a Bank, may demand payment at the compter, so as to fix the endorser, (Bank of United States v. Carneal, 2 Peters’ R. 549.) yet there is no evidence whatever in this case, that Mr. Whitehead did demand payment of himself or of any body else, of this note, at his own Compter, nor does it appear, but what the maker of the note, had funds in Bank'at that very time, sufficient to have satisfied the note? What then is the evidence in this case ? Mr. Molleson testifies that after suit brought, the defendant admitted his endorsement and his liability upon it — he pleaded poverty; was going to the West, and offered to pay half the amount in cash, and to give his note for the balance. This is the whole amount of the evidence; and in my opinion, there is nothing in it to justify an inference that the defendant knew at that time, that he had been legally discharged from his responsibility to pay, by the laches of the plaintiffs. No one fact or circumstance was proved to justify a conclusion that the defendant was then apprised of his true situation. He knew indeed, whether he had, or had not received a notice of demand and non-payment — the probability is that he had received such notice, and if he had it only served to mislead him, to make him suppose himself liable, when in fact he was not; to make him believe that the note had been duly presented for payment, when no such presentment had taken place. It must be recollected, that it is not the notice of demand and non-payment, that fixes the liability of an endorser; for such notice may be given, where no demand has in fact been made ; or if made, where there has been no failure to pay. But it is the fact, of such presentment and dishonor, and notice thereof to the endorser, that renders him liable. On the trial of the cause, it is not enough to prove such notice to the defendant; that is only one step in the proceeding: the plaintiff must go further, and prove the truth of the facts set forth in the notice; namely, that the note or bill was duly presented for payment; and payment refused. In the case of a foreign bill of exchange, the protest under the notarial form and seal, is evidence of those facts; but in the case of promissory notes, even where a regular protest has been made bv a Notary Public, the demand and refusal must be proved by other evidence, *403 except perhaps, in the case of the death or'removal of the Notary Public, under the provisions of the 3d section of the act of 1829, (Ilarr. Comp. 248.) If therefore, an endorser, upon receipt of a proper notice, offers, or promises to pay the note, he is not thereby bound to pay, unless the plaintiff can prove that payment was duly demanded of the maker; or if none was made, a knowledge of that fact, by the endorser when he admitted his liability. But in this case, there was a total failure of proof of any legal demand, and nothing to justify a belief that the defendant had any knowledge of the true state of the case.
It is difficult to understand, and more difficult to reconcile all the nisi prius, and other decisions on this subject, to be found in the books; but I think the true rule is to be found in the cases of Blesard v. Hirst, et al. 5 Burr. 2670; Goodall et al. v. Dolley, 1 T. R. 712; and Cuming v. French, cited in note to 2 Camp. N. P. 106. The last was very much like the present case. The offer made by the defendant, not having been accepted, matters remained in statu quo, and each party stood upon their legal rights — (see cases referred to in Byles on Bills of Exch. 171, &c; 16 Law Lib.) 2 Phil. on Evid. 24. In my opinion, the judgment must be reversed, and the cause be sent down to the proper circuit for trial again, if the plaintiffs desire such re-trial.
Eokd, J. concurred; II VERSON, J. absent.

Judgment Reversed.

Cited in United States Bank v. Southard, 2 Harr. 475-478; Sussex Bank v. Baldwin, Id. 496; Glassford v. Davis, 7 Vr. 350.